IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRENT HAREWOOD,** | | |
| *Plaintiff,* | | |
| v. | | **Civil No.: 1:25-cv-01555-JRR** |
| **BRIAN ALBERT,** *et al.*, | | |
| *Defendants.* | | |

## MEMORANDUM OPINION

Pending before the court is Defendants' Partial Motion to Dismiss Amended Complaint. (ECF No. 20; the "Motion.")  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below, by accompanying order, the Motion will be granted.

## I.    BACKGROUND[1]

### A.  Factual Background

*Pro se* Plaintiff Brent Harewood, a Black man (of Trinbagonian national origin) and a resident of Essex, Maryland, began working as a Correctional Deputy for the Washington County Sherriff's Office ("WCSO") on September 4, 2021.  (ECF No. 17 at p. 2.)  Plaintiff completed a one-year probationary period and received a $5,000 recruitment bonus.  *Id.*  Under Maryland law, the probationary period for correctional officers is limited to one year.[2]  *Id.*  Plaintiff alleges,

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 17.)  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] Correctional Services section 8-209 provides in relevant part: "A probationary appointment as a correctional officer, correctional supervisor, or correctional administrator may be made for no more than 1 year for the purpose of enabling the individual seeking permanent appointment to take a training course prescribed by the Commission."  MD. CODE ANN., CORR. SERVS. § 8-209(b).

notwithstanding the statutory limitation, he was informed by Defendant Craig Rowe ("Major Rowe"), Major and Warden of the Washington County Detention Division, that WSCO's policy required Correctional Deputies who laterally transferred from other facilities (as Plaintiff alleges he did) to serve a one-year probationary period, while new hires were required to serve a two-year probationary period. *Id.*

Plaintiff asserts his probationary period ended on September 4, 2022, one year after he began working for WCSO, and that Major Rowe confirmed as much. (ECF No. 17 at p. 3.) On April 28, 2023, however, Plaintiff was terminated by Defendants Brian Albert ("Sheriff Albert"), Sheriff of Washington County, Maryland, and Major Rowe. *Id.* at p. 2. According to Plaintiff, Defendants "claimed Plaintiff was still a probationary officer, which was false." *Id.*[3] Plaintiff claims his termination was wrongful.

In addition to the foregoing, Plaintiff further alleges he was treated differently from his White co-workers who engaged in excessive force against inmates, but retained their positions and were not criminally charged. (ECF No. 17 at p. 2.) He identifies a White correctional deputy, Charles Donivan, who, Plaintiff alleges, was investigated for bringing a recording device into the Washington County Detention Center (the "Detention Center") to record conversations with Donivan's girlfriend who, Plaintiff confusingly describes as Donivan's "supervisor and subordinate." *Id.* Plaintiff alleges that Sheriff Albert allowed Donivan to resign and "promised him a favorable recommendation" even though Donivan "was facing felony charges and was still on probation." *Id.*

---

[3] Plaintiff adds: "Plaintiff was employed as a Correctional Deputy, not a Deputy Sheriff. A Deputy Sheriff is materially different and governed by separate standards, training, and duties under Maryland law." (ECF No. 17 at p. 2.)

Plaintiff goes on to allege, seemingly drawing a comparison to Donivan's circumstances, that "Plaintiff was not given that same opportunity to resign in good standing." (ECF No. 17 a p. 2). Later in the Amended Complaint, Plaintiff explains that he (Plaintiff) was indicted for second-degree assault in December 2022 (in what the court understands to have been an excessive use of force case) and was acquitted on September 21, 2023. *Id*. at p. 3. Plaintiff explains that instead of being placed on administrative leave "pending the investigation[,] . . . Defendants falsely claimed he was on probation." *Id.*

Plaintiff also claims that Sergeant John Irvin Zerkle, a shift supervisor, who "used a Taser on a handcuffed Black inmate," "was cleared of wrongdoing by Assistant Warden Eddie Long, and no action was taken by Warden Rowe or Sheriff Albert" despite "inconsistent" reports of the incident. (ECF No. 17 at p. 2.) Plaintiff avers that Zerkle's use of force was improper. *Id.*

Plaintiff goes on to allege that, beginning in spring 2022, he experienced a racially hostile work environment. (ECF No. 17 at p. 3.) Plaintiff sets forth examples of the conduct to which he was subjected: (1) coworkers using racial slurs, including the "n-word" and "black walnut;" (2) being referred to as "Sebastian," the crab character from the movie The Little Mermaid, in a mocking manner because of his Caribbean accent; (3) racial jokes implying that others could not see Plaintiff in the dark; (4) a White deputy throwing a banana at Plaintiff; and (5) threats implying a K-9 unit would be used to search Plaintiff's vehicle, which he asserts was a reference to "racial profiling." *Id.* Plaintiff further asserts he was subject to disparate treatment from his White co-workers with regard to employment opportunities. *Id.* In October 2022, Plaintiff applied for a Transport Deputy position. *Id.* Despite passing a physical agility test and being eligible and qualified, Plaintiff claims he was denied the position in favor of less qualified White co-workers. *Id.*

Plaintiff also lists several events that occurred in December 2022: (1) Plaintiff being identified as a Democrat and "known not to support Sheriff Albert;"[4] (2) the Chief of Security joking about searching Plaintiff's vehicle because it was a Mercedes-Benz; (3) fellow Correctional Deputy Shannon Glines accusing Plaintiff of disliking women due to his national origin; (4) Deputy Glines influencing staff to isolate Plaintiff socially; (5) Deputy Glines's husband, a WCSO detective, leading an investigation into Plaintiff, which he claims created a conflict of interest; and (6) "racially charged remarks" made by Deputy Glines about a Black female deputy, who subsequently resigned and was denied reinstatement. (ECF No. 17 at p. 3.) On a separate occasion, Plaintiff alleges a White deputy told a Black deputy to leave the control room because a "Ku Klux Klan meeting" was underway. *Id.* Plaintiff also asserts several employees referred to the Detention Center as a "Good Ol' Boys Club" (which, he contends, suggests "racial exclusivity and systemic bias"), and the Detention Center workforce was 95% White with no people of color in supervisory roles. *Id.*

### B. Procedural History

Plaintiff filed a charge of discrimination with the EEOC and subsequently received a right to sue letter on March 26, 2025. (Ex. 1, ECF No. 1-1.) Plaintiff initiated this action on May 14, 2025. (ECF No. 1.) On July 14, 2026, Defendants filed a Motion to Dismiss (ECF No. 13), which the parties subsequently fully briefed. (*See* ECF Nos. 15, 16.) Prior to the court's ruling on the

---

[4] Plaintiff claims "[i]n November 2021, a White Correctional Deputy assumed Plaintiff was a Democrat, a racially motivated assumption based on stereotypes." (ECF No. 17 at p. 3.)

Motion to Dismiss, Plaintiff filed his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).[5]  (ECF No. 17.)[6]

Plaintiff asserts the following counts:

> Count I: Race, Color, and National Origin Discrimination under Title VII (against Defendant Albert in his official capacity);
>
> Count II: Hostile Work Environment under Title VII (against Defendant Albert in his official capacity);
>
> Count III: Equal Protection and Due Process Violations under 42 U.S.C. § 1983 (against Defendants Albert and Rowe in their individual capacities); and
>
> Count IV: Wrongful Termination in Violation of Public Policy under Maryland Common Law.[7]

(ECF No. 17 at p. 4.)  Plaintiff seeks declaratory relief, compensatory and punitive damages for emotional distress, "back pay, front pay, and restoration of lost benefits," "reinstatement" of his Correctional Officer "certification," pre- and post-judgment interest, attorney's fees and costs, and any other relief the court deems just and proper.  *Id*.

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, "a Rule 12(b)(6) motion should only

---

[5] Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1).

[6] As the Amended Complaint is the operative pleading, Defendants' Motion to Dismiss at ECF No. 13 will be denied as moot.

[7] Count IV does not identify a particular defendant.

be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

III.   **ANALYSIS**

As an initial matter, the court is ever mindful that pro se filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards than filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(e); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th

6

214, 218 (4th Cir. 2022).  Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented.  *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Defendants argue for partial dismissal of Plaintiff's claims on the following grounds: (1) Plaintiff's hostile work environment claim (Count II) fails as a matter of law; (2) Count III of the Amended Complaint fails to state a claim against either Defendant for violations of 42 U.S.C. § 1983; and (3) Count IV of the Amended Complaint fails to state a claim for wrongful discharge. (ECF No. 20-1 at pp. 516.)

### A. Plaintiff's Hostile Work Environment Claim under Title VII (Count II)

Plaintiff asserts his hostile work environment claim under Title VII against Defendant Sheriff Albert in his official capacity only.  (ECF No. 17 at p. 4.)  He claims that "[t]he persistent racial insults and threats altered the conditions of [his] employment, creating a hostile work environment[.]"  *Id*.  Defendants argue Plaintiff fails to "allege that either Sheriff Albert or Warden Rowe participated in or were aware of any of these alleged incidents of discrimination."  (ECF No. 20-1 at p. 7.)  Defendants further assert that "[i]n the absence of facts establishing his supervisors either knew about or should have known about the abuse and failed to stop it, the alleged abuse cannot be attributed to his employer."  *Id.*

By way of background, "Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects

to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "Racial harassment that creates a 'hostile work environment' is actionable under Title VII because it amounts to discrimination in the conditions of employment." *Purnell v. Maryland*, 330 F. Supp. 2d 551, 560 (D. Md. 2004). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [he] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Importantly, however, at the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' under the evidentiary framework set forth in *McDonnell Douglas Corp.*" *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

"To state a hostile work environment claim, a plaintiff must allege offending behavior that was (1) unwelcome, (2) based on race [or another protected class], (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere, and (4) imputable to the employer." *Booth v. Cnty. Executive*, 186 F. Supp. 3d 479, 486 (D. Md. 2016)

8

(citations omitted).  Defendant does not dispute, and the court is satisfied, that Plaintiff satisfies elements one and two.  (ECF No. 33 at p. 18.)  Plaintiff has alleged that he experienced unwelcome harassment, in the form of racially derogatory jokes and comments, including a racially discriminatory action.  (*See* ECF No. 17 at p. 3.)  Rather, Defendant argues that Plaintiff fails to satisfy the third and fourth elements of the claim.  (ECF No. 20-1 at p. 6.)

As previously explained by this court:

> In weighing whether conduct was sufficiently "severe or pervasive" under the third element of a hostile workplace environment claim, courts consider the following non-exhaustive factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  The Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test[.]"

*Green v. iMentor, Inc.*, No. CV RDB-24-2567, 2025 WL 2299432, at *8 (D. Md. Aug. 8, 2025) (internal citations omitted).  The severe or pervasive "element of a hostile work environment claim has both subjective and objective components.  Therefore, the [plaintiff] must show that [the plaintiff] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–23 (1993)).

As to the fourth element, "[a]n employer may be held liable for a hostile work environment created by co-workers and third parties 'if it knew or should have known about the harassment and failed to take effective action to stop it . . . *[by] respond[ing] with remedial action reasonably calculated to end the harassment.*'" *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) (quoting *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 319 (4th Cir.2008) (emphasis in original).  "Knowledge of harassment can be imputed to an employer if a 'reasonable [person], intent on complying with Title VII,' would have known about the harassment.  Under this rule an

employer may be charged with constructive knowledge of coworker harassment when it fails to provide reasonable procedures for victims to register complaints." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003) (internal citations omitted). "Under Title VII, an employer's liability for workplace harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 421 (2013). If the harassing employee is a supervisor and the supervisor's harassment culminates in a tangible employment action (such as hiring, firing, or failing to promote), the employer is strictly liable for workplace harassment. *Id.*

Assuming without deciding that the alleged harassment here is sufficiently severe or pervasive to state a hostile work environment claim, Plaintiff fails to allege facts to plausibly allege that such harassment may be imputed to Plaintiff's employer. As Defendants note, most of Plaintiff's allegations of harassment fail to identify the harassing employee and additional allegations only identify Correctional Deputy Shannon Glines, presumably a co-worker of Plaintiff, as a harasser. (ECF No. 17 at p. 3.) Moreover, the Amended Complaint contains no allegations on which a reasonable fact finder could conclude or infer that the purported harassment occurred openly or in the presence of any of Plaintiff's supervisors, including Defendants. Therefore, the court cannot accurately assess employer liability. In his opposition, Plaintiff avers that he failed to identify all harassers in his pleading "due to fear of retaliation" and he will identify them during discovery. (ECF No. 22 at p. 2.)

Even if it were not necessary to identify the harassers, Plaintiff fails to allege that his employer, Sheriff Albert, knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action. Plaintiff asserts that he did not

10

complain about the harassment to his superiors because it would have resulted in even harsher treatment and retaliation. (ECF No. 22 at p. 2.) Nevertheless, as set forth above, knowledge may only be imputed to the employer if it failed to provide reasonable procedures for victims to register complaints. *See Ocheltree*, 335 F.3d at 334, *supra.* The court agrees with Defendants that Plaintiff's Amended Complaint "does not allege that the Washington County Sheriff lacked procedures for reporting harassment, that [Plaintiff] was blocked or obstructed from taking advantage of those procedures, or that he ever made any attempts to report the alleged harassment to either of the [D]efendants." (ECF No. 24 at pp. 2–3.)

Accordingly, the court finds that Plaintiff fails to state a plausible claim for hostile work environment and Count II of the Amended Complaint will be dismissed.

## B. Plaintiff's Section 1983 Claim (Count III)

Next, Plaintiff asserts that his constitutional rights of equal protection and due process "were violated by intentional discrimination, lack of due process, and retaliation based on political affiliation." (ECF No. 17 at p. 4.) Defendants argue that Plaintiff's § 1983 claim is without merit and address each alleged violation in turn. (ECF No. 20-1 at pp. 7–13.)

### 1. *Official vs. Individual Capacity*

In assessing the viability of Plaintiff's § 1983 claim, the court first must determine whether the claim is brought against Defendants in their official and/or individual capacity. "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

11

"Personal capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original). Additionally, the Fourth Circuit has held that factors indicating that a state official is being sued in an individual capacity include "plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom . . . [and] plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

In his Amended Complaint, Plaintiff states that his § 1983 claim is against Defendants Albert and Rowe in their individual capacities. (ECF No. 17 at p. 4.) Additionally, Plaintiff has not alleged that Defendants acted in accordance with governmental policy or custom, and he seeks both compensatory and punitive damages. *Id.* Based on the general factual allegations, the requested relief, and the express statement that Count III is brought against Defendants in their "Individual Capacities," *id.*, the court will address the claims against Defendants as such.

### 2. *Intentional Discrimination and Retaliation for Political Affiliation*

As a preliminary matter, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 creates a private right of action but does not create a substantive right; rather, it creates "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Two elements are essential to state a claim under § 1983; the plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a "person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (holding that "[t]o state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'") (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' applicable to Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180). "[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." *Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted). Although Plaintiff fails to affirmatively state that Defendants acted under color of state law, the parties do not dispute that Sheriff Albert and Major Rowe were acting under color of state law. Thus, the court must determine whether Defendants' alleged actions are sufficient to violate Plaintiff's constitutional rights.

Initially, Defendants argue that the Amended Complaint fails to state a claim for intentional discrimination against either Defendant in their individual capacity because Plaintiff "does not allege that either Sheriff Albert or Major Rowe was personally involved in the specific acts of

13

discrimination [Plaintiff] alleges occurred." (ECF No. 20-1 at p. 8.) In response, Plaintiff alleges disparate treatment based on race in violation of the Equal Protection Clause, asserting that he was terminated for minor misconduct while White employees were not terminated after engaging in serious misconduct. (ECF No. 22 at p. 2.) As to Plaintiff's claim for retaliation based on political affiliation, Defendants notes that Count III of the Amended Complaint frames this as a violation of the Due Process and/or Equal Protection Clause. (ECF No. 20-1 at p. 12.) Although not specified in Count III, page one of the Amended Complaint specifies that Plaintiff intends to assert this claim as a violation of the First Amendment.[8] (ECF No. 22 at p. 1.) Nevertheless, before turning to the merits of the alleged constitutional violations, the court must determine whether Plaintiff properly asserts a claim against Defendants under § 1983.

"Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). "The doctrine of *respondeat superior* has no application under this section." *Id.* In the absence of individual liability, a plaintiff may establish supervisory liability. The Fourth Circuit has held:

> In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show:
>
>> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

---

[8] "Based on what is known as the *Elrod–Branti* doctrine, 'public employees who allege that they were discharged . . . solely because of their partisan political affiliation or nonaffiliation state a claim for deprivation of constitutional rights secured by the First and Fourteenth Amendments.'" *Bland v. Roberts*, 730 F.3d 368, 395 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 349 (1976)).

> > (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> >
> > (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
>
> *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994). As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "proof of causation may be direct ... where the policy commands the injury of which the plaintiff complains ... or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* (internal quotation marks and alterations omitted).

*Wilkins v. Montgomery*, 751 F.3d 214, 226–227 (4th Cir. 2014).

As set forth in the court's discussion of Plaintiff's hostile work environment claim, Plaintiff fails to plead facts, accepted as true, that the discriminatory conduct he complains of were committed by either Defendant individually. Additionally, Plaintiff's claim of retaliation due to his political affiliation cannot be imputed to either Defendant in their individual capacity. With regard to his political affiliation, Plaintiff asserts in November 2021, a White Correctional Deputy assumed he was a Democrat, which he claims is "a racially motivated assumption based on stereotypes[]," and in December 2022, Plaintiff was "identified as a Democrat and known not to support Sheriff Albert." (ECF No. 17 at p. 3.) There are no facts alleged to suggest that either Defendant was aware of Plaintiff's political affiliation or that any such knowledge led to deprivation of a constitutional right. For the same reasons, on the facts alleged, Plaintiff cannot

15

establish supervisory liability over either Defendant because no facts alleged suggest Sheriff Albert or Major Rowe had actual or constructive knowledge of the discriminatory conduct Plaintiff alleges occurred based on his race, national origin, or political affiliation.

Accordingly, to the extent Count III asserts a claim for intentional discrimination and retaliation based on political affiliation, it will be dismissed.  The court next addresses Plaintiff's claim for "lack of due process" under § 1983.

### 3.  *Due Process Violation*

While Plaintiff asserts he was wrongfully terminated by Defendants on April 28, 2023, to the extent Plaintiff seeks to assert a claim against Defendants pursuant to § 1983 because his termination violated his due process rights, this claim also fails.  Defendants assert that Sheriff Albert was free to terminate Plaintiff's employment for any reason because he was still on probation at the time of his termination and Plaintiff does not plead facts to establish a protected property or liberty interest in continued employment.  (ECF No. 20-1 at p. 10.)

To establish a due process claim, Plaintiff must first identify a legitimate claim of entitlement to a protected liberty or interest.  The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. XIV, § 1.  "These words mean that the government may not take certain actions without providing procedural protections mean to prevent erroneous decisions."  *Elhady v. Kable*, 993 F.3d 208, 219 (4th Cir. 2021).  "[T]o advance a due process claim, [a plaintiff] must first establish that he had a property or liberty interest at stake."  *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source" such as a statute.  *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577

(1972).  Of import here, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Strickland v. United States*, 32 F.4th 311, 348 (4th Cir. 2022) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must . . . have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577.

Plaintiff argues that the statutory probationary period for a Correctional Deputy is one year, not two, and his probation ended on September 4, 2022, prior to his termination.  (ECF No. 22 at p. 2.)  Therefore, he claims a protected property interest in "a legitimate expectation of continued employment."  *Id.*  Plaintiff points to Maryland Correctional Services section 8-209, which provides in relevant part: "A probationary appointment as a correctional officer, correctional supervisor, or correctional administrator may be made for no more than 1 year for the purpose of enabling the individual seeking permanent appointment to take a training course prescribed by the Commission."  MD. CODE ANN., CORR. SERVS. § 8-209(b).  As referenced above, Plaintiff distinguishes himself as a Correctional Deputy and not a Deputy Sheriff, which he claims are subject to different standards and duties under Maryland law.  (ECF No. 17 at p. 2.)

Defendants argue that Maryland law and the WCSO do not distinguish between different types of deputy sheriffs.  Pursuant to Maryland Courts and Judicial Proceedings section 2-335, which pertains specifically to Washington County: "Any deputy sheriff . . . (1) [s]hall be placed on a probationary status for the first 2 years of the deputy sheriff's employment; and (2) [e]xcept as otherwise provided by law, may be dismissed by the Sheriff for any reason during that probationary period."  MD. CODE ANN., CTS. & JUD. PROC. § 2-335(e)(3)(i).  Therefore, based on

the facts alleged, Plaintiff's probationary period would have ended September 4, 2023, after the date of his termination.  Contrary to Plaintiff's assertion, this statutory provision does not provide a property interest in continued employment; it merely provides an expectancy in continued employment if the deputy is not terminated during the probationary period.  *See Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990) (holding that "[a] local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest.").

Accordingly, Plaintiff fails to establish a constitutionally protected property interest impaired in violation of his due process rights and the remaining claim of Count III will be dismissed.

### C.  Plaintiff's Wrongful Termination Claim (Count IV)

Count IV of the Amended Complaint asserts "Plaintiff was discharged in violation of Maryland public policy that prohibits discrimination and retaliation based on race, national origin, or political beliefs."  (ECF No. 17 at p. 4.)  Defendants argue that while Plaintiff "is correct that Maryland recognizes a general cause of action for wrongful discharge in violation of public policy, that cause of action does not apply to the facts alleged here."  (ECF No. 20-1 at p. 14.)

"The tort of wrongful discharge is an exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all."  *Miller v. U.S. Foodservice, Inc.*, 405 F.Supp.2d 607, 610 (D. Md. 2005).  "[T]o establish wrongful discharge, the employee must be discharged, the basis for the employee discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee."  *Id.*  (quoting *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002)).  An employee asserting wrongful discharge "must specifically identify

the clear mandate of Maryland public policy that was violated by his termination." *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002). "'[T]here must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment or prior judicial decision, directing, prohibiting, or protecting the conduct in question' so that the matter is not one of conjecture or interpretation." *Rosero v. Johnson, Mirmiran & Thompson, Inc.*, No. CV GLR-21-588, 2022 WL 899442, at *8 (D. Md. Mar. 28, 2022), *aff'd.* No. 23-2041, 2024 WL 773586 (4th Cir. Feb. 26, 2024) (quoting *Miller*, 405 F.Supp.2d at 610).

The only public policies set forth in the Amended Complaint alleged to have been violated by Plaintiff's termination are those that prohibit workplace discrimination and retaliation. (ECF No. 17 at p. 4.) As previously held by this court, "because the generally accepted reason for recognizing the tort [of wrongful discharge] is that of vindicating an otherwise civilly unremedied public policy violation, the tort does not apply to cases alleging employment discrimination prohibited by Title VII or the Maryland Fair Employment Practices Act, because the law already supplies a civil remedy." *Rosero v. Johnson, Mirmiran & Thompson, Inc.*, 2022 WL 899442, at *8 (quoting *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, No. ELH-20-0423, 2021 WL 4772918, at *23 (D. Md. Oct. 13, 2021)). Accordingly, Plaintiff fails to state a claim for wrongful discharge in violation of public policy under Maryland law and Count IV of the Amended Complaint will be dismissed.

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion (ECF No. 20) shall be granted and Counts II, III, and IV of the Amended Complaint will be dismissed.

March 23, 2026

/S/

_____
Julie R. Rubin
United States District Judge

19